THOMPSON et al. v. JOHNSON-KEMNITZ DRILLING CO. et al.

No. 31301. Oct. 5, 1943.

Rehearing Denied Feb. 8, 1944.

*145 P. 2d 422.*

Snyder & Lybrand, Twyford & Smith, and Wm. J. Crowe, all of Oklahoma City, for plaintiffs in error.

Paul Brown, of Oklahoma City, for defendant in error Johnson-Kemnitz Drilling Company.

William H. Zwick, of Ponca City, for defendant in error Continental Oil Company.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendant in error Eason Oil Company.

Don Emery and Rayburn L. Foster, both of Bartlesville, and E. G. DeParade and Wm. J. Zeman, both of Oklahoma City, for defendant in error Phillips Petroleum Company.

Keaton, Wells & Johnston, of Oklahoma City, for defendant in error Ardie Oil & Gas Company.

Embry, Johnson, Crowe & Tolbert, of Oklahoma City, for defendant in error Liberty National Bank of Oklahoma City.

Willingham & Fariss, of Oklahoma City, for defendant in error C. A. Rodesney.

Edward H. Chandler and Ralph W. Garrett, both of Tulsa, R. M. Williams and Miley, Hoffman, Williams, France & Johnson, all of Oklahoma City, for defendant in error Sinclair Refining Company.

GIBSON, V. C. J. By this appeal the plaintiffs in error Thompson, Wilmarth, and Routledge question the sufficiency of the sum awarded them by the judgment and decree of the district court in an action for accounting.

Thompson instituted the action, and defendants Wilmarth and Routledge, by separate pleadings, joined in his petition for accounting against the other defendants. Since there is no controversy between said plaintiffs in error, they will be referred to generally as plaintiffs.

The action sought a determination of plaintiffs' rights as lot owners to participate with certain of the defendants in the production of oil and gas, or in the proceeds thereof, from a drilling block or area located within the limits of Oklahoma City and defined in a drilling permit issued to such defendants by the city building superintendent allegedly pursuant to municipal ordinances.

The drilling area as defined in the permit is composed of blocks 1 and 2, Aungst addition to Oklahoma City. Each block contains numerous lots of different ownership.

Plaintiffs are the owners of lots 11 and 12, an undivided one-half interest in lot 13, and the east half of lot 14, in said block 2. Their title was acquired by different conveyances and compromised litigation, and, as to a portion, was quieted in the present action. The first interest acquired by them was an undivided one-sixth interest in lots 11 and 12, and was purchased some four months subsequent to the issuance of the drilling permit, and after operations had commenced.

The permit was issued on May 19, 1930, by the building superintendent on the affidavit of one of the defendants stating that it was the owner of an oil and gas mining lease on all the lots within the drilling block. Soon thereafter drilling operations were commenced on property other than that belonging to plaintiffs, and the well completed in due course as a producer.

It developed, however, that the lessee had no valid lease on the property now owned by plaintiffs.

On May 23, 1940, by supplemental petition in the present action, the defendant lessees, drilling contractors, oil purchasing companies, .etc., were first brought into this litigation, which was commenced in November, 1930, by plaintiffs against other parties to quiet title to lots 11 and 12 aforesaid.

Plaintiffs sought to establish their alleged rights as tenants in common with the lessees to participate in the drilling operations from the beginning by tendering their proportionate part of the cost thereof and receiving their proportionate part of the proceeds.

The judgment of the trial court, based on the referee's report, denied plaintiffs' claim as tenants in common, but permitted recovery for their proportionate part of the one-eighth royalty as reserved to the lessors in the community lease. Their right to so participate in the royalty was not disputed by defendants.

Plaintiffs' lots comprise 5.26 per cent of the total area of the drilling block. The court gave them that percentage of one-eighth of all oil produced, whereas they claimed 5.26 per cent of all the oil produced.

If plaintiffs are correct in their assertion, their claim can be justified only upon tenancy in common with the lessees of the right to produce; and their argument is based on that theory.

Plaintiffs take the position that the permit issued by the building superintendent created a drilling block of which their property was a part, and by reason thereof they became tenants in common with all other lot owners, or their lessees, of the right to produce the oil under said drilling block, and since they had executed no lease or other contract with defendant lessees they were entitled as at common law to all the rights and privileges accruing to tenants in common in such case where one of their

number goes upon the premises and produces oil without the consent of the others. Ludey v. Pure Oil Co., 157 Okla. 1, 11 P. 2d 102; Moody v. Wagner, 167 Okla. 99, 23 P. 2d 633; Earp v. Mid-Continent Petroleum Corp., 167 Okla. 86, 27 P. 2d 855, 91 A. L. R. 188. The rule is that a tenant in common producing oil and gas from the common property is liable to account to his cotenants for their proportionate share of the market value of the oil and gas produced, less the reasonable and necessary costs of production. Moody v. Wagner, supra.

Plaintiffs question the legality of the drilling permit, and at the same time seek to affirm it. They question its validity for failure of the lessees to comply with the city ordinances in obtaining it. They affirm the permit by asserting rights that can arise only in event of the creation of a legal drilling block. In the absence of such a communitized area as provided by ordinance, nothing resembling a tenancy in common in all the area or drilling block could exist among the constituent owners thereof. In the absence of a drilling block within the meaning of the city ordinance, there would be no common interest of any kind among the various lot owners. Amis v. Bryan Petroleum Corp., 185 Okla. 206, 90 P. 2d 936.

City ordinance No. 3865, relating to zoning for oil and gas development, provides, among other things, that before a permit to drill a well shall be issued by the building superintendent the applicant must submit a sworn statement showing that he owns, controls, or has under lease all the property within the drilling block where the well is to be put down, and the statement must show the names and addresses of all parties having any right, title, or interest in any property within the block. It is further provided that in case the statement shall show that the applicant has not such control of all the property and cannot obtain same, then the board of adjustment, on appeal, shall have authority to grant the permit in event the applicant owns, con-

trols, or has under lease at least 51 per cent of the total acreage.

Plaintiffs say the statement submitted to the building superintendent showed that the applicant did not own, control, or have under lease all the property in the block, and that it was applicant's duty in such case to proceed before the board of adjustment for a permit, where all parties are entitled to notice and to have their rights fixed. Amis Case, supra.

Plaintiffs contend, in effect, that there now exists a valid permit to produce oil from the drilling block of which their property is a part, but their rights to participate in the drilling operations or in the benefits arising therefrom have never been fixed by contract, or judicially determined.

If plaintiffs are to receive any benefits at all from the production of the well in question, that production must be had under and by virtue of the drilling permit. The well was not drilled on their own premises, and if there is a tenancy in law or equity that will enable them to participate, that tenancy was created by the permit issued pursuant to the ordinance aforesaid. A relationship in the nature of a tenancy in common was authorized by the zoning ordinances which were enacted in the exercise of the city's police powers. Amis v. Bryan Petroleum Corp., supra. In that case we said:

"The tenancy owes its existence to those powers and is entirely subject thereto. The parties cannot successfully assert their common-law rights as tenants in common, for such a tenancy actually does not exist."

Plaintiffs' alleged right now to elect to participate in the working interest is based upon the failure of notice to their grantors of the application for the drilling permit. Plaintiffs say they have succeeded to all the rights of their grantors in this respect.

The trial court held against plaintiffs on that issue. But, as we view the case, it is unnecessary for us to review that matter.

Defendants' plea of laches was sustained by the trial court, and its judgment on that issue is fully supported by the evidence. That, alone, demands affirmance of the judgment.

The evidence shows that plaintiffs knew of the issuance of the permit before they acquired any interest in the block. They knew all along of the drilling operations and the production. They made no demand upon the defendants, and stood by for almost ten years and witnessed the production and sale of the oil, and all the while spoke only of their "royalty" interest. Plaintiffs made no attempt or offer to pay their proportionate part of the operation expenses until the well proved profitable, knowing at all times for almost ten years that defendants considered their claims as only applying to the one-eighth royalty, which claims for most of the period were tied up in litigation with other parties. Under the facts of this case, even if plaintiffs had been entitled to share in the working interest at their election, they waited too long to voice their decision. There was ample evidence to show that plaintiffs knew from the start that the lessees were claiming the entire seven-eighths working interest as their own. Plaintiffs were under the imperative duty to speak within a reasonable time, and the defendants were misled by their prolonged silence. The delay constituted laches, and plaintiffs are now estopped.

Equity will not aid a party who, with full knowledge of the facts, and without risk to himself, stands by an unreasonable length of time and sees another assume all the risks in an uncertain venture in which said party might have shared, and, after success of the venture, seeks to share in the benefits thereof. That rule applies as between parties entitled to share in the production of oil. Parker v. Ryan, 143 Okla. 187, 287 P. 1006. When considering a similar claim the court in the latter case held:

"The injustice, therefore, is obvious

of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit."

Notwithstanding the recognized judicial power of the board of adjustment to determine the rights of lot owners whose title is not in dispute to participate in the royalties and working interest in cases of this character, defendants do not question the propriety of the present action; and we do not consider the matter.

The judgment is affirmed.

RILEY, OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, C.J., and WELCH, J., dissent.