## DENVER PRODUCING & REFINING CO. v. STATE et al.

Nos. 32370, 32456.   Jan. 14, 1947.

Rehearing Denied July 1, 1947.

*182 P. 2d 503.*

Stanley B. Catlett, of Oklahoma City, for plaintiff in error.

Robinson, Shipp & Robertson, by T. Murray Robinson, all of Oklahoma City,

for respondents Grover C. Meeker and Zoe Marie Meeker.

BAYLESS, J. This appeal from the Corporation Commission involves the correctness of an order made by it after hearing the application of Denver Producing & Refining Company to determine the equities in its favor and duties of Meekers and their lessee, Gulf Petroleum Company. Denver's announced intention to drill two wells on tracts of land in which the three were the owners of various interests in the oil rights, and the failure of Meekers et al. to comply with Denver's demand to pay their proportionate share in advance, brought on the controversy.

The quarter section of land involved was divided into four drilling spaces by the commission under statutory authority, 52 O.S. 1941 § 87 and amendments. Denver owned and controlled all of the working interest except a small fraction, and Gulf was lessee of Meekers thereunder. Denver began one well December 13, 1944, and finished it February 21, 1945, began another February 25, 1945, and finished it April 30, 1945, neither of which is involved herein, began well No. 3 April 27, 1945, and finished it June 30, 1945, and began well No. 4 July 1, 1945, and it was yet drilling when the application was heard, the two applications for wells Nos. 3 and 4 being consolidated for a hearing with a similar order issued in each case. The commission gave respondents an opportunity to post a bond to pay their proportionate part of the cost and thereby be entitled to receive their proportionate part of the seven-eighths (7/8ths) working interest production from said well, or in the alternative, and if they did not post such bond within the required period of time, they should be entitled to receive a lease bonus in the sum of $750 an acre, the acceptance of which would preclude respondents from participating in the seven-eighths (7/8ths) working interest production from said wells. The respondents jointly posted bonds agreeing to pay a one-sixteenth

(1/16th) portion of the cost of such operations.

Apparently acting in reliance upon the amendment to section 87, H. B. 257, S. L. 1945, above, and a rule adopted by the Corporation Commission in January, 1945, Denver served written demand on Meekers and Gulf on March 30, 1945, for the payment by them prior to drilling operations of the estimated share of the cost of drilling well No. 3, apportioned to their interest, and on June 7, 1945, served a similar demand on those parties with respect to well No. 4. In response to the first notice Meekers et al. sent a letter reading in part:

"We are therefore your mining partner. If you can show us that we are obligated to pay our proportionate part over unto you before you even begin drilling operations, then we are willing to make such payment. If, however, the position of our attorneys is correct, we are not obligated to join in any partnership or operating agreement which is not satisfactory to us."

In response to the second notice, Meekers et al. sent a letter reading in part:

"House Bill 257, to which you refer in said letter, was an effort on the part of the Legislature to provide an orderly procedure for the determination of, and adjudgment of, the rights of the several owners of the interest in the oil and gas production in an established spacing unit.

"It is my present opinion that the act is valid, but no doubt its validity will be challenged. If such act be valid, we will, of course, abide by a final order fixing the rights of the parties within such unit to the production therein.

"We must at the present time decline to furnish our proportionate part of the cost of drilling such well as shown by the estimate attached to your letter."

Denver took the position at the hearing before the Corporation Commission, and maintains it here, that the above letters were outright refusals on the part of Meekers et al. to pay or guarantee payment of their share of the drilling costs prior to the drilling, and constituted on the part of Meekers et al. a policy of watchful waiting to see the outcome of the drilling in order that they might withhold any payment if the drilling wells or either were unsuccessful. They assert such a position is unlawful under the statute and Corporation Commission rule above and amounted to inequitable conduct under our decisions, Amis v. Bryan Pet. Corp., 185 Okla. 206, 90 P. 2d 936; Cooke v. Westgate-Greenland Oil Co. et al., 185 Okla. 209, 90 P. 2d 940; Thompson et al. v. Johnson-Kemnitz Drilling Co., 193 Okla. 507, 145 P. 2d 422; and for this they should be penalized by being denied participation in the working interest and should be required to accept a reasonable bonus for a lease and be relegated to the position of royalty owners. The real purpose of Denver is, using the authority of a city regulatory board such as acted in Oklahoma City and the scheme of operation used by it, to place all of these parties in approximately the position occupied by the owners of similar interests in oil producing land within Oklahoma City; and for this purpose they present an analogous status between the city ordinances and board regulations applicable in Oklahoma City and the statute and Corporation Commission order referred to above. The argument on part of Meekers et al. is that there is no logical basis for such a contention and urge that their position throughout has been consistent with the law cited, and the order of the Corporation Commission about which Denver complains is also consistent with their interpretation of the law and a vindication of their position. They deny the implications inferred from their letters above by Denver.

We agree with their position. It is apparent from the amended statute above that the Legislature intended to direct the attention of the Corporation Commission to the subject matter and to authorize the adoption of regulations

and the application thereof to situations such as are before us, but the Legislature in so doing left open for the control details many aspects that could legally and more practicably be administered by rules adopted by the Corporation Commission within the purview of the 1945 amendatory act. The order of the Corporation Commission of January, 1945, is in keeping with the 1945 Act, above, but is far short of the detailed provisions of the city ordinances and board regulations applied in Oklahoma City. There is not in the 1945 Act nor in the order of January, 1945, any mandatory time element, although the general wording of each might justify "an order defining, fixing, and adjusting correlative rights and obligations" of the parties prior to, during, or after drilling operations. The adoption by Denver of some of the steps used under the Oklahoma City scheme previously referred to, without the Legislature or the Corporation Commission having so provided in detail, was gratuitous and not binding on Meekers et al. in the manner and to the extent urged by Denver.

The written demands made by Denver antedated any drilling operations on the respective wells involved herein, and likewise antedated any resort to the regulatory power of the Corporation Commission. Of course, if Meekers et al. had complied therewith, we would have no controversy. Since they did not, we must determine whether the amendatory act of 1945 and the order of January 1945, authorized Denver to force Meekers et al. to participate with it in the proposed drilling operations upon terms fixed by Denver. We can say it was entirely proper for Denver to invite their participation, but the law only authorized Denver to apply to the Corporation Commission for "an order defining, fixing, and adjusting the correlative rights and obligations" of the parties if Meekers et al. did not voluntarily join in the proposed drilling operation. We see nothing in the statute and order designed to punish those to be governed by it for their declining to act in compliance with an invitation or demand for participation in the drilling of a proposed well before "an order defining, fixing, and adjusting the correlative rights and obligations" of the parties has been made. If Denver, or another in a similar position, desired an order of the type prescribed before drilling in order that it might avoid drilling a dry hole without being able to enforce any contribution toward the expense thereof by others interested, it should have procured such an order, following the declaration of intent of Meekers et al., before it began drilling.

Neither party questions the authority of the commission to act under the provisions of 52 O. S. 1941 §87 and amendments and order of the Corporation Commission of January, 1945.

The argument offered on the second point, which attacks the fairness of the order actually made by the Corporation Commission, loses much of its force in the face of our preceding observations. After denying, in effect, the power of the Corporation Commission to make an order, in the face of all the facts, allowing Meekers et al. to participate in the production from these wells upon payment of part of the drilling costs, Denver says that the order fixing the lease bonus value is grossly excessive in favor of Meekers. To say this, Denver is forced to try to fix a stable rather than speculative value for Meekers' lease interest prior to any operations on this quarter section of land. It seems to us that simple regard to the entire history of this matter shows how unfair this would be to Meekers. It is clear from Denver's evidence that the market value of their lease was speculative. It undoubtedly was unsatisfactory to Meekers since they did not lease under terms remotely comparable to the values fixed by Denver's witnesses. Denver's position in this respect ignores completely the effect upon the value of Meekers' lease of the two wells Denver had already drilled on this quarter

section prior to the serving of the two notices before us. In addition, whether the figure fixed by the Corporation Commission is too favorable to Meekers is largely irrelevant in the face of their refusal to accept such a figure rather than the probably more advantageous terms of their lease contract with Gulf. Since Meekers are not going to put Denver to the burden of buying their lease at the figure fixed, Denver will not be hurt thereby.

The order appealed from is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, WELCH, and ARNOLD, JJ., concur.